

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMRO ELSAYED &  LOLA SALAMAH (H/W) )
 )
 )
Plaintiffs, )       1:18-CV-01045
 )
vs. )
 )
FAMILY FARE LLC., and M. M. FOWLER INC., )
and LEE BARNES, Jr., individually and as President )
of  FAMILY FARE LLC., and M. M. FOWLER )
INC., and  DONALD PILCHER, individually. )
 )
Defendants. )

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR 59(e) MOTION TO ALTER OR AMEND A JUDGMENT AND THEIR 59(a)(2), 60(b) MOTION FOR NEW TRIAL
### (*Further Action After a Nonjury Trial*)

Pursuant to Local Rule 7.2, Plaintiffs respectfully submit this memorandum in support of their 59(e), 59(a) and 60(b) Motions, and pray the Court for relief and a new trial (Further Action After a Nonjury Trial) on the grounds of: (1) granting the motion is necessary to prevent manifest injustice; (2) there is a clear error of law concerning the ground of dismissing Plaintiffs' claim; (3) opposing party's counsel misrepresented the law; (4) Plaintiffs' failing to cite rebuttable cases is excusable neglect; and, (5) "other reason that may justify relief."

1

## STATEMENT OF THE CASE

Plaintiffs commenced this lawsuit as *pro se* on December 26, 2018, for several counts. Following Defendants Motions for Judgment on the Pleading and Motion for Summary Judgement, this Court dismissed all of Plaintiffs' claims except their claim for Unfair and Deceptive Trade Practices Act and wrongful eviction by self help-forcible eviction. In a bench trial, the Court granted Defendants' 52(c) Motion for Partial Finings and dismissed Plaintiffs' remaining claims on the grounds that Plaintiffs lack standing, and their business entity, ALMY, LLC has only the standing for forcible eviction and UDTPA claims.

## STATEMENT OF THE FACTS

At trial, Plaintiffs produced evidence which established that on November 30, 2018, without prior notice, Defendant Pilcher arrived at the Reynolda Road Family Fare store early in the day and confiscated the safe key and collected the cash from inside the office. Later on that day, Plaintiff Salamah was notified by Donald Pilcher to go to the Reynolda store for a meeting. Additionally, an inventory auditing company was called upon the store to make a final audit to count the entire inventory of the store. Upon Salamah's arrival later in the afternoon, Pilcher handed Salamah a termination letter, a waiver of rights, and a portion of the franchise and lease agreement. Plaintiff Salamah objected immediately to the eviction. Upon Salamah's objection, Pilcher indicated that if Plaintiff Salamah did not leave, he would remove her by force. Salamah called Plaintiff Elsayed to come to the store for protection from being forcibly evicted. Both Plaintiff

Elsayed and Plaintiff Salamah were humiliated and degraded by Pilcher. Pilcher inferred that the Plaintiffs were thieves and convinced the Police Officer of the same.

Over the course of the entire eviction that night, both Plaintiff Salamah and Plaintiff Elsayed objected to the eviction several times and asked for an attorney or a court order. When Plaintiffs were told to gather their belongings and leave, they were only allowed to grab most of the paperwork in the office, but no other belongings. When Plaintiffs requested their business equipment, Donald Pilcher refused to allow Plaintiffs their rightfully owned equipment. Plaintiffs were demanded to leave the equipment in the store. For an innumerable amount of times throughout the eviction, both Pilcher and the Police Officer indicated that Pilcher, not Plaintiffs, would be responsible for the money and inventory inside the store. In fact, it was the Plaintiffs who requested that Pilcher count the money in the store in front of the police officer. During the trial both Plaintiffs demonstrated that they suffered emotional distress and financial hardships as a result of Defendants' tortious act.

Moreover, Plaintiffs and Defendants stipulated evidence that demonstrated Plaintiffs' possession and occupation of the store was lawful and peaceable at the time of the forcible eviction. In the initial pleading, Plaintiffs raised their claim for **<u>Wrongful Self-Help Forcible Eviction</u>** which is an action for tort, and not a breach of contract claim. [ECF No.1 at 35]

3

## QUESTIONS PRESENTED

I. Whether a relief from judgment and a new trial are necessary to prevent manifest injustice.

II. Whether it is a clear error of law in determining that Plaintiffs do not have standing.

III. Whether the opposing party's misrepresentation or misconduct is sufficient for relief.

IV. Whether Plaintiffs' failing to cite a case to rebut that opposing party's misrepresentation of the law is excusable neglect for a relief.

## ARGUMENT

## I. There is a Clear Error of Law in Ruling that Plaintiffs Lack Standing

### (1) Plaintiffs have Standing that Entitle them for Recovery in the Forcible Action Claim

Action of forcible eviction has been raised in North Carolina courts for many years. Since the 1800's, the action has been named a forcible entry and detention. *See Adam's Ex'rs. v. Robeson,* 5 N.C. 392, 393 (1810). ("A forcible entry and detainer is an injury of both a civil and criminal nature.") *See* also *State v. Johnson,* 18 N.C. 324, 326 (1835). (A person who has a lawful title of the land may "not take possession with strong hand, nor with multitude of people, but only in a peaceable and easy manner".) A person committing forcible entry was subject to civil liability and criminal charge per statute. *See Mosseller v. Deaver,* 106 N.C. 494, 11 S.E. 529, 530 (1890) ft No.1 *Citing* Code N. C. § 1028. *See* also N.C.G.S. § 14-126 Repealed 1987, and *State v. Blackmon,* 36 N.C.

4

App. 207, 210, 243 S.E.2d 417, 419 (1978). There have been many instances where a possessor of land, who may or may not have had title to the land, has been wrongfully or unlawfully evicted. A plaintiff who had the peaceable possession is entitled to recover at least nominal damages for the trespass. A plaintiff "is entitled to recover damages for any injury inflicted upon his person, his furniture, his tools, and even his house, if it is a fixture only." Mosseller v. Deaver, at 530 "There may also be awarded exemplary damage if the unlawful act be done in a wanton and reckless manner." *Id.* In these instances the courts have awarded nominal, compensatory, and punitive damages based upon the injuries sustained by the wronged party. *Id.* When a landowner enters on the land forcibly, and ejects a person who is in actual possession without title, the latter can, in an action of damages for forcible entry and detainer against the owner, recover only nominal damages for the entry. *Id* At common law, an owner of land who had been evicted by paramount title, was at the very least entitled to nominal damages, even where he had suffered no actual injury. *See Higgins v. Dail,* 61 A.2d 38, 40 (D.C. 1948), (The law presumes that some damages followed from invasion of tenant's right by unlawful eviction). In most jurisdictions, nominal damages are recoverable even when the eviction is by paramount title. *Thorley v. Pabst Brewing Co.,* 179 F. 338 (2nd Cir. 1910).

More than hundred years ago, North Carolina Common law established that a plaintiff who was not a recent trespasser or intruder has a standing to bring an action for a forcible eviction. *Mosseller v. Deaver,* at 530. Most other states have more restricted rules against forcible eviction. For instance, in Virginia and South Carolina, even trespassers have standing for forcible eviction action. *See Olinger v. Shepherd,* 53 Va. 462 (1855)

5

("In a proceeding for an unlawful entry or detainer, if the defendant has entered unlawfully, the plaintiff is entitled to recover without any regard to the question of his right of possession"). *See also*, *Vance v. Ferguson,* 101 S.C. 125, 85 S.E. 241 (1915). (The Court held, "One in possession of a burial lot, suing for defendant's forcible entry and detainer thereof, was entitled to stand on her possession without proof of title.)

What is more, the **Fourth Circuit,** in an action against the United States for forcible eviction held that even if a plaintiff's possession is unlawful to the land, plaintiff's "objection to initial incursions onto and subsequent occupation of the property [is sufficient to] rendered the [entrant's] actions forceful and actionable under North Carolina law." *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 758 (4th Cir. 1990).

Plaintiffs are unable to find a single case, where a court in any state, had ever held that only the named tenant on the lease agreement has standing to bring an action for forcible eviction. All state courts agree to a common element that a plaintiff whose possession and presence on the land is lawful, actual and peaceable has standing to bring an action for forcible eviction. *See Daluiso v. Boone,* 71 Cal. 2d 484, 486, 455 P.2d 811, 812 (1969). (A person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor and that the forcibly entering defendant's title or right of possession is no defense to such action). The "occupant of real property meaning one in the peaceable and undisturbed possession of such lands." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1038, 90 Cal. Rptr. 3d 453, 480 (2009). "A necessary predicate to a cause of action for

6

forcible entry is that the parties bringing action were in actual and peaceable possession of the property." *Frisco Joes, Inc. v. Peay,* 558 P.2d 1327 (Utah 1977). "Even though the plaintiff was a trespasser, the defendant had no right to forcibly evict him." *Parsons v. Missouri Sav. Bank & Tr. Co.*, 114 S.W.2d 203, 206 (Mo. App. 1937). D.C. court also held that a full tenancy is not required to maintain standing. In *Gregorio v. Hoover,* the Court found that a church's district changing the locks on certain church buildings to prevent a former minister access to those buildings was a sufficient act to maintain standing for a wrongful eviction claim, even if there is no lease that would give him a right to use or occupy the property. *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 54 (D.D.C. 2017). *Gregorio* Court held that "**something less than some sort of tenancy**" is sufficient. *Id.* No court has ever held that only the named tenant on the lease agreement has the sole standing for a forcible eviction claim.

Moreover, New York common law permits a landlord for peaceable (not forcible self-help eviction) similar to North Carolina. However, in New York, non tenants have standing for forcible eviction. *See Almonte v. City of New York*, 166 Misc. 2d 376, 377, 636 N.Y.S.2d 261 (App. Term 1995) (Forcibly evicted "nontenants" have a standing for a cause of action.). See Also *P & A Bros., Inc. v. City of New York Dep't of Parks & Recreation,* 184 A.D.2d 267, 269, 585 N.Y.S.2d 335, 336 (1992). ("nontenants" may be removed summarily so long as it is done without violence.). In Connecticut, a plaintiff, whose son was the named lessee on the lease agreement, brought causes of action of forcible eviction. *Sethi v. Yaglidere*, No. CV044003034S, 2009 WL 2963283, at *2 (Conn. Super. Ct. Aug. 24, 2009), aff'd sub nom. *Sethi v. Yaglidere,* 125 Conn. App. 902,

7

10 A.3d 52 (2010). The defendant argued the plaintiff is not the proper party to bring a wrongful eviction action and that the plaintiff lacks standing, as there was never a landlord/tenant relationship between the parties, and there was no written lease between the parties. *Id.* at *7. Seth's Court held that for a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry, and the Court held the plaintiff has standing thereon. *Id.* at *9.

In this case, both Plaintiffs were lawfully the possessors and the occupants of the Reynolda Family Fare store. The Defendants never argued that Plaintiffs were trespassers. Plaintiff Salamah was at the Reynolda store when the eviction happened because Defendant Pilcher deceptively requested her appearance for a meeting. It was reasonable and foreseeable for Plaintiff Elsayed to be present at the store when the forcible eviction occurred. Elsayed had always worked at the store during the weekend and if it were not for preparing for his final exams, he would have been working at the store that day. It was foreseeable and reasonable for Pilcher to anticipate that Elsayed would rush to the store when he threatened Salamah to be physically removed by force. Both Plaintiffs' presence at the store when they were forcibly evicted was lawful and peaceable. Therefore, under any law, both Plaintiffs have standing and they are the actual party in interest for the self-help forcible eviction under the claim of wrongful eviction.

Defendants' counsel argued that only the tenant may have standing for forcible eviction. The argument is misleading *per se*. A tenant is well defined in the common law. "Tenant means the possessor or the occupant of the land. Someone who holds or possesses lands or tenements by any kind of right or title." TENANT, Black's Law

8

Dictionary (11th ed. 2019). "A tenant is one who occupies land or the premises of another in subordination to the other's title, and with his assent, express or implied" *In re Wilson's Estate,* 349 Pa. 646, 649, 37 A.2d 709, 710 (1944). "[T]he word 'tenant' is derived from the Latin 'teneo' meaning to hold and is defined generally as meaning anyone who holds or possesses land or tenements or who has the occupation or temporary possession of such property, the title to which is in another. *Town of Southington v. Francis,* 159 Conn. 64, 71, 266 A.2d 387, 391 (1970). "Tenants without leases can raise a wrongful eviction claim under the common law." *Segreti v. Deiuliis*, 193 A.3d 753, 757 (D.C. 2018). There is no case or statute that has ever confined the word "tenant" to the limit of only the person named on the lease agreement, in a forcible eviction action.

In their trial brief, Defendants don't dispute the fact that Plaintiffs have standing if the forcible eviction is a tort action. There is no court that has ever held that a claim of wrongful eviction for a self-help forcible eviction is a breach of contract. The Restatement of law stated that a forcible eviction is a tort action. *See* Restatement (Second) of Torts § § 88-95 (1965) (A tenant has a tort action against a landlord for injuries to the tenant's person and goods caused by the landlord's forcible entry.) *See* also Restatement (Second) of Property, Land. & Ten. §§ 14.1 &14.2 (1977). Also, *see generally* 6 A.L.R.3d 177 (Originally published in 1966). Forcible wrongful eviction is intentional torts where punitive damages are available. *Robinson v. Sarisky,* 535 A.2d 901, 906 (D.C. 1988); *Oliver v. Mustafa*, 929 A.2d 873, 875 (D.C. 2007). "California recognizes the tort of wrongful eviction." *Nativi v. Deutsche Bank Nat'l Tr. Co.*, 223 Cal. App. 4th 261, 293, 167 Cal. Rptr. 3d 173, 200 (2014). "A forcible or other wrongful

9

ouster gives the tenant a tort action for damages for wrongful eviction." *Ginsberg v. Gamson,* 205 Cal. App. 4th 873, 141 Cal. Rptr. 3d 62 (2012). "Courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." *Id.* In New York, "wrongful trespass or eviction of a tenant by a landlord constitutes a tort and renders the landlord liable in damages for any loss the tenant may suffer as a natural consequence of the wrongful act." *Filby v. Gaden,* 275 A.D. 847, 88 N.Y.S.2d 782 (1949). In Oklahoma, "forcible and wrongful eviction is a tortious conduct and not just a breach of the rental contract." *Main v. Levine,* 189 Okla. 564, 118 P.2d 252, 255 (1941). In Georgia, a "landlord who forcibly evicts a tenant without filing a dispossessory action and obtaining a writ of possession is subject to damages in tort for the wrongful eviction." *Steed v. Fed. Nat. Mortgage Corp.,* 301 Ga. App. 801, 805, 689 S.E.2d 843, 848 (2009) citing *Entelman v. Hagood,* 95 Ga. 390, 392–393, 22 S.E. 545 (1895); *Lanier v. Kelly,* 6 Ga.App. 738, 739–740, 65 S.E. 692 (1909). Each and every state has recognized the action which arises from self-help forcible eviction as a tort cause of action. In the nineteenth century, North Carolina recognized forcible eviction as a tort action. *See Mosseller v. Deaver,* at 530. The Fourth Circuit linked forcible eviction to the old common law trespass tort and held that a person who has standing for trespass cause of action has the same standing for forcible eviction. *See Dunbar Corp. v. Lindsey,* at 758.

Even if the Court is not persuaded by the above argument, and finds that the LLC is the sole and only real party in interest to prosecute for the forcible eviction claim, both

10

Plaintiffs have a third party standing for intentional tort committed against the LLC. *See* Restatement (Second) of Torts § 99 (1965) (Liability to Third Person), ("An act which is privileged for the purpose of taking possession of land subjects the actor to liability to a third person for any harm unintentionally done to him only if the actor realizes or should realize that his act creates an unreasonable risk of causing such harm.") Even if the harm was unintentionally done to Plaintiffs, they have standing for recovery because Defendants realized, or should have realized, that by humiliating and embarrassing plaintiffs, then forcibly evicting them without prior notice creates the risk of causing such harm.

There is no Court that has ever held that the tenant named on the lease agreement is the only real party in interest to have standing for a claim of self-help forcible eviction. There is no court that has ever held that a plaintiff whose possession and occupancy of the land is lawful and peaceable, and in which they were forcibly evicted, had no standing for a forcible eviction claim. In light of the Fourth Circuit controlling authority, both Plaintiffs have standing that entitled them to recovery for the tort self-help forcible eviction under a wrongful eviction claim.

### (2) Both Plaintiffs have Standing as Intended Third Party Beneficiaries

Even if the Court is not persuaded that forcible eviction is a tort action, and it is merely a breach of contract, then both Plaintiffs have standing for this action as the intended beneficiary. "The determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. *Raritan River Steel Co. v.*

11

*Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991). Both Plaintiffs were intended to benefit from the lease agreement. There is not a single document that was ever directed to the LLC and did not include Plaintiff Salamah. The Defendants' policy that only one member or one shareholder can be named on the business entity is sufficient to warrant that at least Plaintiff Salamah was the intended beneficiary of the agreement. Therefore, Salamah has standing.

**(3) Both Plaintiffs have Statutory Standing for their Unfair Deceptive Trade Practices Act Claim**

Even if the Court is not persuaded with Plaintiffs' argument of standing in the forcible claim, Plaintiffs have statutory standing to maintain their claim. This Court has held that forcible eviction of a commercial tenant is within the North Carolina Unfair Deceptive and Trade Practices Act. (ECF. No 97 at 34-37) The Court also found that Defendants forcibly evicted Plaintiffs which was the proximate cause of Plaintiffs' injuries, at trial. Plaintiffs' claim was dismissed only on the grounds that Plaintiffs lacked standing. N.C. Gen. Stat. 75.1-16 provides that "[i]f ***any person*** shall be injured or ***the business of any person***, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing.[..]" N.C.G.S. 75-16. The legislative language is clear to include both Plaintiffs of this case. Pursuant to the statute language, the legislative intent and the statute interpretation, both Plaintiffs have statutory standing for the UDTPA claim.

12

Both Plaintiffs have statutory standing for the UDTPA claim. Even if the Court finds that Defendants did not commit tort or a breach of contract, Plaintiffs retained their UDTPA "any person" statutory standing. *See Marshall v. Miller,* 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) (The legislative intent of the UDTPA is to remedy the plaintiff and punish the defendant, even if the common law of contract or tort failed to do so.) "Unfair and deceptive trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions." *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.,* 174 N.C. App. 49, 61, 620 S.E.2d 222, 231 (2005). "The measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." *Richardson v. Bank of Am., N.A.,* 182 N.C. App. 531, 562, 643 S.E.2d 410, 429 (2007). "G.S. 75–1.1 creates a cause of action broader than traditional common law actions." *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 232, 314 S.E.2d 582, 585 (1984).

Both Plaintiffs are within the N.C.G.S. 75-16., "any person" definition. The statute does not limit recovery for a person's business. The North Carolina Court of Appeals has intentionally cited the phrase, "actual injury to the ***plaintiff or to his business***" more than forty times in different cases to illustrate that a plaintiff has standing for recovery of any injury for himself or to his business. *See Spartan Leasing Inc. v. Pollard,* 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991) to *Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar,* 264 N.C. App. 260, 275, 826 S.E.2d 723, 733 (2019), review denied, 373

13

N.C. 173, 833 S.E.2d 625 (2019). The Fourth Circuit had cited the same in its precedents. *See Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 121 (4th Cir. 2021). More than forty citations of "**plaintiff or to his business**" demonstrates that a plaintiff with UDTPA injuries has standing even if the injury was intended for his business. In the present case, Plaintiffs have demonstrated evidence that the eviction has injured them and their business. Both Plaintiffs suffered from emotional distress, humiliation and embarrassment. Both Plaintiffs' business was injured and destroyed by Defendants ceasing the inventory, equipment and cash. Therefore, both Plaintiffs have standing under the UDTPA.

Even if the Court is not persuaded by the argument of "any person" or "plaintiff or to his business," both Plaintiffs have standing as "indirect purchasers." The North Carolina Court of Appeals held "that by enacting the 1969 revisions to N.C.G.S. § 75–16, the General Assembly clearly intended to expand the class of persons with standing to sue for a violation of Chapter 75 to include any person who suffers an injury under Chapter 75, regardless of whether that person purchased directly from the wrongdoer." *Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 577, 473 S.E.2d 680, 684 (1996). The North Carolina Supreme Court held that "N.C.G.S. § 75–16 provides standing to any person who suffers any injury, as well as for any business injury. *Walker v. Fleetwood Homes of N. Carolina*, Inc., 362 N.C. 63, 68, 653 S.E.2d 393, 397 (2007). A mobile home purchaser's daughter, for whom a mobile home was purchased, was an injured party who had standing to bring unfair deceptive trade practices action against the builder for defects in the home under statute providing the same language of "any person." *Id.* The

14

Third Circuit Court, in applying Pennsylvania's UDTPA, which is similar to the North Carolina one, held that a "roomer, who obtained a room through services of a local community action agency, was a 'purchaser' of housing, such that he had standing to bring a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, even if the contractual relationship existed between landlord and agency, rather than landlord and roomer." *Williams v. Kusnairs Bar & Tavern*, 288 Fed. Appx. 847, 852 (3d Cir. 2008). Even if no contractual relationship existed between Plaintiffs, they have an "indirect purchaser" standing that entitles them to recovery for their UDTPA claim.

Under "any person," "plaintiff or to his business," or "indirect purchasers," both Plaintiffs have standing for their UDTPA claim. The Defendants' Counsel omitted the UDTPA statutes from his argument, and failed to cite any cases that may demonstrate to the Court that Plaintiffs have no standing under the North Carolina General Statute §75-16.

### (4) The LLC not Named as a plaintiff on the Pleading is a "Failure to Prosecute in the Name of The Real Party in Interest," and not, a Lack of "Standing"

The Defendants' Counsel's argument that the case should be dismissed on the grounds that Plaintiffs have no standing and only their LLC has standing for this action is defective as a matter of law. The Federal Rule of Civil Procedure 17 provides that, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FRCP 17(a)(3). A plaintiff's

15

business entity is a real party in interest for Defendants' argument. Defendants' using the word, "standing" instead of, "real party in interest" had misled Plaintiffs. Defendants had not raised any objection for not prosecuting in the name of the real party in interest. If Defendants' raised such objection, which they did not, Plaintiffs should have been awarded reasonable time to add the LLC to the case before dismissing the action.

## II.  The Opposing Party's Misconduct or Misrepresentation of the Law was Severe Prejudice to Plaintiffs

Defendants' Counsel began the trial with an intention to mislead justice. In the very beginning of the trial Counsel raised a hearsay objection for Defendant Pilcher's deposition while he was testifying on the witness stand in an attempt to prevent impeaching him. Then, Counsel produced Defendants Trial Exhibit 203 that were missing essential pages to demonstrate the amount of the confiscated cash and the value of the converted goods. Plaintiffs relied on the exhibit with missing pages in examining Pilcher. Then, after Plaintiffs rested their case, Defendants' Counsel moved the Court for partial finding pursuant to F.R.C.P 52(c). Defendants' Counsel made a frivolous argument, misrepresented the law, and failed to cite controlling cases from the Fourth Circuit.

Defendants' Counsel argued that Plaintiffs have no standing because they were not named on the agreement, and he also argued that Plaintiffs are not entitled to punitive damages pursuant to the signed agreement. Counsel is using the agreement as a sword and a shield by asking the Court to enforce the agreement on Plaintiffs, who he alleged, are not part of the agreement. Counsel also misled justice by raising a contractual defense

16

for a tort claim. Counsel's frivolous argument had been made in courts many years ago, did not prevail, and was found not to be debatable. *See Quong v. McEvoy*, 70 Mont. 99, 224 P. 266, 267–68 (1924) (Forcible eviction sounds in tort and is not founded upon a breach of the covenants of the lease. *Main v. Levine,* 189 Okla. 564, 118 P.2d 252, 255 (1941) (Forcible and wrongful eviction is tortious conduct not just breach of the rental contract). Counsel cites cases where either the lease agreement was contractual breached or where the plaintiff was not in the actual possession of premises when eviction occurred. All cases that were cited in his argument are irrelevant and were produced to mislead justice. Defendants' Counsel also misrepresented the law by alleging that the Court should assess Plaintiffs' case in properance of evidence for partial findings. The allegation is entirely false and misrepresenting the law. Counsel failed to cite the controlling law. "Rule 52(c) gives the district court discretion to decline to render any judgment until the close of the evidence." *Martin v. Harris,* 560 F.3d 210, 218 (4th Cir. 2009).

Moreover, Honorable Judge Eagles, the district Judge of U.S Middle District Court, asked Counsel if there are any cases where courts found a person who is not named in the lease had standing to bring an action for forcible eviction, Defendants' Counsel responded that he could not find any. The case law, as mentioned above, is full of cases where courts had held that not only the tenant named on the lease has standing for wrongful action but any possessor and the occupant of the land. Counsel's argument was to mislead justice and prejudice to Plaintiffs.

**III. A Judgment Relief and a New Trial are Necessary to Prevent Manifest Injustice**

17

Plaintiffs, who were injured, damaged and destroyed by Defendants for many years, were prejudiced by Defendants' conduct and misrepresentation of the law. Justice was miscarried, a new trial and relief from the judgment is truly needed to prevent the manifestation of injustice. Plaintiffs have been litigating for their rights for more than two years. The litigation has financially depleted Plaintiffs, and the cost of appeal will add more harm to Plaintiffs. Soon after the Court granted Defendants' 52(c) motion, Defendants' Counsel emailed Plaintiffs requesting a bill of $350,000 in fees. (*See* Exhibit A.) In the name of justice, Plaintiffs pray to the Court for relief from the judgment and to be awarded a new trial.

## IV. Plaintiffs' Failing to Cite Rebuttal Cases is Excusable Neglect

Before granting Defendants' 52(c) Motion, the Court inquired whether Plaintiff Elsayed had any precedent cases to rebut Defendants' Counsel's allegation. Plaintiff Elsayed admitted that he should have been better prepared and prays the Court to excuse his neglect. On February 12, 2021, after the trial, Plaintiff Elsayed emailed Defendants' Counsel William Cherry requesting him to correct his false statement of law which was made to the Court by him. In his response, Counsel did not rebut that he made a false statement of the law, but instead blamed Plaintiff Elsayed for not citing cases to rebut his misrepresentation. Although Defendants' Counsel has intentionally and knowingly misrepresented the law, Plaintiff Elsayed prays the Court to excuse his own neglect for being unable to cite cases. The results of his neglect significantly prejudiced both Plaintiffs.

## CONCLUSION

Pursuant to North Carolina common law and its precedent cases, both Plaintiffs have standing for their self-help forcible eviction of wrongful eviction claim. Also, both Plaintiffs have standing pursuant to the Fourth Circuit controlling holding in *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 758 (4th Cir. 1990). Plaintiffs' claim arises in tort where no contractual legal relationship is required for standing. Plaintiffs were tenants as the common law defined the word "tenant." Plaintiffs have third party standing, if the court already found that the tort was committed against their LLC. Plaintiffs have UDTPA statutory standing pursuant to N.C.G.S 75-16. Defendants' Counsel misrepresented the law and justice was miscarried, thereon. Granting the foregoing motion is necessary to prevent a manifestation of further injustice. Therefore, Plaintiffs pray the Court to grant their motion for relief from the judgment and grant them a new trial.

This is the 2nd day of March 2021.

Amro Elsayed, Pro Se
2615 Wyman Road
Winston Salem, NC 27106
949.735.3153
amroelawady@gmail.com

Lola Salamah, Pro Se
2615 Wyman Road
Winston Salem, NC 27106
949.735.3184
lolasalamah@gmail.com

19

# CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

As reported by word processing software, the Plaintiffs certify that the foregoing Brief complies with the applicable word limitation and does not exceed 6,250 words.

This is the 2nd day of March 2021.

Amro Elsayed, Pro Se
2615 Wyman Road
Winston Salem, NC 27106
949.735.3153
amroelawady@gmail.com

Lola Salamah, Pro Se
2615 Wyman Road
Winston Salem, NC 27106
949.735.3184
lolasalamah@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the Plaintiffs' 59(b), 59(e) and 60(b) motions brief has been filed manually with the Clerk of Court. A copy will be sent electronically by CM/ECF of such filing to the following address:

William S. Cherry III
cherry@manningfulton.com
Jessica B. Vickers
vickers@manningfulton.com
MANNING, FULTON & SKINNER, P.A.
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina 27619
(919) 787-8880
(919) 325-4604

This the 2nd day of March, 2021.

Amro Elsayed, *Pro Se*
2615 Wyman Road
Winston Salem, NC 27106
949.735.3153
amroelawady@gmail.com

Lola Salamah, *Pro Se*
2615 Wyman Road
Winston Salem, NC 27106
949.735.3184
lolasalamah@gmail.com